**HUBER, HUNT & NICHOLS, INC., Plaintiff-Appellant,**

v.

**ARCHITECTURAL STONE CO., INC., a Louisiana Corporation, and State of Louisiana, Defendants-Appellees.**

No. 78–2575.

United States Court of Appeals, Fifth Circuit.

Aug. 27, 1980.

---

Russ M. Herman, Fred L. Herman, New Orleans, La., Christopher Kirages, Indianapolis, Ind., for plaintiff-appellant.

Henican, James & Cleveland, C. Ellis Henican, New Orleans, La., for Architectural Stone Co.

Robert E. Redmann, La. Dept. of Justice, Bruce P. Anderson, New Orleans, La., for State of Louisiana.

Before THORNBERRY, FRANK M. JOHNSON, Jr. and HENDERSON, Circuit Judges.

HENDERSON, Circuit Judge:

The appellant, the plaintiff below, filed this suit to compel the defendants-appellees to submit two contract disputes to a single arbitration panel. The district court treated the matter as one of state law and denied relief. Because federal law controls the outcome of the case we must vacate the judgment and remand to the trial court to determine a difficult threshold eleventh amendment question.

Huber, Hunt & Nichols, Inc. (hereinafter referred to as "Huber, Hunt"), was the general contractor for the construction of the Louisiana State University Medical Center and Education Building in New Orleans. The printed contract identifies the owner as "the State of Louisiana, Division of Administration." The Division of Administration is an arm of the governor's office. Architectural Stone Company (hereinafter referred to as "Architectural Stone") was a subcontractor, supplying and installing granite facing for the building's exterior. The project fell behind schedule, and, pursuant to the general contract, Huber, Hunt asked the American Arbitration Association (hereinafter referred to as ("AAA") to arbitrate its claim for damages arising from the delay.[1] Huber, Hunt claimed that the building would have been completed on time if the owner had provided adequate specifications for the foundation. It alleged that the original specifications were the cause of "an inordinately high incidence of breakage of prestress concrete pilings." Subsequently, Architectural Stone asked the AAA to arbitrate its claim against Huber, Hunt for damages caused by construction delays.[2]

In an attempt to have the two arbitration proceedings consolidated, Huber, Hunt brought this diversity action[3] in the United States District Court for the Eastern District of Louisiana. The court heard argument on the motion to consolidate before considering the owner's motion to dismiss for lack of subject matter jurisdiction.[4]

---

1. The owner refused to arbitrate, so Huber, Hunt went to the Louisiana state courts, which eventually ordered the owner to submit to arbitration. *Huber, Hunt & Nichols, Inc. v. State,* 367 So.2d 1293 (La.App.), *writ denied,* 369 So.2d 1379 (La.1979).

2. Huber, Hunt urges that both disputes stem from the owner's "improper rejection of pilings for the project." Architectural Stone disagrees. The district court never reached this question.

3. The complaint does not clearly state the basis of the court's jurisdiction, but throughout the proceedings the parties treat this as a diversity case.

4. The owner maintained that the state was not a citizen for diversity purposes and that the eleventh amendment barred the suit.

Another matter raised below was the satisfaction *vel non* of the amount-in-controversy requirement. The plaintiff successfully asserted that the ultimate determination of this controversy might result in payments greatly in excess of $10,000.00. The plaintiff's contention that the eleventh amendment does not apply since it can only be a defense when there is a

Ruling from the bench, the trial judge denied the motion to consolidate.[5]

This appeal followed. Huber, Hunt insists that the district court erred in applying Louisiana law. The appellees, needless to say, defend the district court's decision pointing to a variety of reasons why consolidation is inappropriate under either federal or state law. The crux of their position is that the owner is the State of Louisiana, and hence the suit is barred by the eleventh amendment to the Constitution.

■ The action was brought against Architectural Stone "and State of Louisiana."[6] At first blush it would appear that the eleventh amendment precludes the suit, at least as far as the state is concerned. Recently, however, federal courts have permitted actions against the political subdivisions of states, independent state agencies, and state officials acting in their official capacities, especially in cases asserting claims under the Civil War amendments. *See e. g., Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 54, 98 S.Ct. 2018, 2035 n. 54, 56 L.Ed.2d 611, 635 n. 54 (1978); *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed.2d 714 (1908). Thus, the refined question is whether the owner is the alter ego of the state or an independent agency; if the latter, the district court can properly proceed to the merits.

"That there has been room for differences of opinion with regard to such limitations the reported cases in this court bear conclusive testimony. It cannot be stated that the case before us is entirely free from any possible doubt . . . ." *Ex parte Young*, 209 U.S. at 142, 28 S.Ct. at 446, 52 L.Ed. at 722. This is certainly no less true now than it was in 1908. *See generally Centraal Stikstof Verkoop., N.V. v. Alabama State Docks Dept.*, 415 F.2d 452, 454–57 (5th Cir. 1969); 32 Am.Jur.2d Federal Practice and Procedure §§ 25, 26, and 105–08 (1967); 1 Moore's Federal Practice ¶ 0.60[2.—2] (2d Ed. 1979); Mathis, *The Eleventh Amendment: Adoption and Interpretation*, 2 Ga.L.Rev. 207 (1968).

In our Circuit the issue of whether a state is "a necessary party," *Hopkins v. Clemson Agricultural College*, 221 U.S. 636, 31 S.Ct. 654, 55 L.Ed. 890, 896–97 (1911)—*viz.*: Is the owner the "second self" of the state or a "separate and distinct" entity subject to suit—"must be determined by the law of the State," *Louisiana Land & Exploration Co. v. State Mineral Bd.*, 229 F.2d 5, 7 (5th Cir.), *cert. denied*, 351 U.S. 965, 76 S.Ct. 1029, 100 L.Ed. 1485 (1956). This is a question that the state courts will seldom, if ever, have answered, and unfortunately the parties have been unable to locate controlling precedent.

■ Where, as here, the status of the defendant is unclear, the court must look to any and all available sources for guidance. Consideration should be given to the own-

---

possibility that a judgment will require the state to expend funds from its treasury, which argument we do not accept, is not entirely consistent with this "ultimate-payment" argument.

5. The judge then added "I believe that, necessarily, the motion to dismiss is granted." The owner suggests this comment reflected the conclusion that the court lacked jurisdiction over the owner, but we decline to so interpret it. The owner itself notes that the district court chose not to hear argument on the jurisdiction issue.

6. The presence of the state as a named defendant is not conclusive of the eleventh amendment question; the federal courts have power to entertain the suit unless the state has an actual and direct interest in the outcome of the litigation. *Cf. Ex parte Nebraska*, 209 U.S. 436,

28 S.Ct. 581, 52 L.Ed. 876, 880–81 (1908); *Missouri, Kansas & Texas Ry. v. Hickman*, 183 U.S. 53, 22 S.Ct. 18, 46 L.Ed. 78 (1901). These decisions dealt with cases removed from state courts, and the issue was whether the states were the real plaintiffs. Of course, the eleventh amendment is inapplicable where a state is a plaintiff, but *Hickman* suggests that the amendment should be given the same construction as the removal statutes. 183 U.S. 58–59, 22 S.Ct. 20–21, 46 L.Ed. 83–84. *But cf. Osborn v. Bank of the United States*, 9 Wheat. 738, 22 U.S. 738, 6 L.Ed. 204 (1824) (the amendment *only* applied when the state was a record party) (*Osborn* does not reflect current law; *see* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, Hart & Wechsler's The Federal Courts and the Federal System 930 (2d ed. 1973) [hereinafter cited as "Hart & Wechsler"]).

er's "right to hold and use property," whether it has express authority to "sue and be sued, plead and be impleaded, in its corporate name," *Clemson*, 221 U.S. at 639, 31 S.Ct. at 655, 55 L.Ed. at 895–96, the extent of the owner's independent management authority, *Jagnandan v. Giles*, 538 F.2d 1166 (5th Cir. 1976), *cert. denied*, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083 (1977); *Louisiana Land*, 229 F.2d at 8, and, a factor that subsumes all others, the treatment of the owner by the Louisiana courts, *C.H. Leavell & Co. v. Bd. of Comm'rs of Port of New Orleans*, 424 F.2d 764, 766–67 (5th Cir. 1970). *See also Centraal Stikstof Verkoop., N.V. v. Alabama St. Docks Dept.*, 415 F.2d 452 (5th Cir. 1969); *Dept. of Highways of Louisiana v. Morse Bros. & Assoc.*, 211 F.2d 140 (5th Cir. 1954); *Usry v. Louisiana Dept. of Highways*, 459 F.Supp. 56 (E.D.La.1978).

The Division of Administration has been a party to several cases recently decided by the Louisiana courts. In *Haughton Elevator Division v. State, Through the Division of Administration*, 367 So.2d 1161 (La.1979), the Supreme Court of Louisiana held that the actions of the Division in awarding public contracts must comport with the due process requirements of the fourteenth amendment. *Bennett v. Division of Administration*, 307 So.2d 118 (La.App.1974), upheld the termination of a Division employee for the "misappropriation . . . of funds to which the State was rightfully entitled," and throughout the opinion the court referred to checks given to the Division as state funds. Both of these cases can be construed as treating the Division as the "second self" of the state, but its status was not an issue in either, and was irrelevant to the outcome of both. Finally, in *Smith v. Division of Administration*, 362 So.2d 1101 (La.1978), the court resolved an extremely complicated and much-litigated question of Louisiana law, and held that most employ-

ees of the Division are not "employees of the governor" within the meaning of the State Constitution's civil service provisions. Unfortunately, the opinion does not deal specifically with the problem here, and we can find nothing in it to aid our inquiry.

This court has previously observed that when there is no "controlling state precedent . . . [w]e give great weight to the view of the State law taken by a district judge experienced in the law of that state . . ." *C.H. Leavell & Co. v. Bd. of Comm'rs of Port of New Orleans*, 424 F.2d at 766, quoting *Freeman v. Continental Gin Co.*, 381 F.2d 459, 466 (5th Cir. 1967). It is therefore appropriate to remand the case so that the parties can be afforded an opportunity to present both sides of the issue in an orderly and complete fashion. *Walker v. Felmont Oil Corp.*, 240 F.2d 912, 916 (6th Cir. 1957); *cf. Plataro Limited v. Unidentified Remains of a Vessel*, 508 F.2d 1113, 1115 n. 3 (5th Cir. 1975) (noting an eleventh amendment problem to be considered on remand).

Without reaching the eleventh amendment question, the district court held that he could not grant the requested relief under Louisiana law.[7] He found "dispositive" Louisiana decisions holding that there can be no consolidation absent express contractual provision therefor. Although state law is usually adopted in diversity cases, it is not followed in an action to enforce the arbitration provision of a contract in interstate commerce. The parties to these contracts are from different states, and if, as appears likely, performance necessarily entailed interstate commerce, *cf. E.C. Ernst, Inc. v. Manhattan Construction Co. of Texas*, 551 F.2d 1026, 1040 n. 36 (5th Cir. 1977) (finding interstate commerce involved on appeal), enforcement of the arbitration clause in federal court is controlled by the United States Arbitration Act, 9 U.S.C.A. §§ 1–14, and not Louisiana law.[8] *Prima*

---

7. The plaintiff asserted that consolidation could be ordered under both Louisiana and federal law, which may explain the trial court's failure to consider federal law.

8. The general contract provides that it should be "governed by the law of the place where the project is located." To Architectural Stone, this means Louisiana law applies. We are not so sure that this clause was designed to ensure that Louisiana law would govern the enforce-

*Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Tullis v. Kohlmeyer & Co.,* 551 F.2d 632, 638 n. 8 (5th Cir. 1977). *See Tejas Development Co. v. McGough Bros.,* 165 F.2d 276, 278–79 (5th Cir. 1947).

The Arbitration Act itself is silent on the subject of consolidation, but some federal courts construed it to permit consolidation, even in the face of contrary state law. *Compania Espanola de Petroleas, S.A. v. Nereus Shipping, S.A.,* 527 F.2d 966 (2d Cir. 1975), *cert. denied,* 426 U.S. 936, 96 S.Ct. 2650, 49 L.Ed.2d 387 (1976); *Robinson v. Warner,* 370 F.Supp. 828 (D.R.I.1974); *cf.* Fed.R.Civ.P. 81(a)(3) and 42(a) (consolidation of actions presenting common question).

If the contract comprised a part of interstate commerce, the district court should not have treated the case as one governed by Louisiana law.[9] If its decision on the eleventh amendment issue does not foreclose further action,[10] the court should determine whether the contract involved interstate commerce and, if so, proceed to the

propriety of consolidation under the Arbitration Act.[11]

The judgment of the district court is VACATED, and the case is REMANDED for further proceedings consistent with this opinion.

---

ment of the arbitration provisions, but even if so the Arbitration Act would be dispositive. *Commonwealth Edison v. Gulf Oil Corp.,* 541 F.2d 1263 (7th Cir. 1976); *Collins Radio Co. v. Ex-Cell-O Corp.,* 467 F.2d 995 (8th Cir. 1972); *Hilti, Inc. v. Oldach,* 392 F.2d 368 (1st Cir. 1968); *Mamlin v. Susan Thomas, Inc.,* 490 S.W.2d 634 (Tex.Civ.App.1973); Note, Commercial Arbitration in Georgia, 12 Ga.L.Rev. 323, 332–35 (1978); *cf. E.C. Ernst, Inc. v. Manhattan Construction Co.,* 511 F.2d at 1029 n. 1 and 1040. *But cf. Standard Co. v. Elliot Const. Co.,* 363 So.2d 671, 677 (La.1978) (apply "law of the project site"). We need not answer the thorny question of whether the Arbitration Act is federal substantive law that must be applied in Louisiana courts. *See generally Merrill Lynch v. Ware,* 414 U.S. 117, 135 n. 15, 94 S.Ct. 383, 393 n. 15, 38 L.Ed.2d 348, 364 n. 15; *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 87 S.Ct. 1801, 18 L.Ed.2d 1270, 1279 (1967) (Black, J., dissenting); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 404–05 (2d Cir. 1959), *cert. granted,* 362 U.S. 909, 80 S.Ct. 682, 4 L.Ed.2d 618, *dismissed,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); Hart & Wechsler at 731–32; 1A Moore's Federal Practice § 0.317[7] (1979); Note, Commercial Arbitration in Georgia, 12 Ga.L.Rev. 323, 326–35 (1978).

9. Huber, Hunt asks that we vacate the judgment in the event we hold for the owner on the eleventh amendment question, so that the judgment would not be res judicata on a consolidation request in the state courts. The owner agrees that the judgment should not constitute a bar to litigation in state court.

10. Huber, Hunt suggests that the court could order Architectural Stone to enter a consolidated proceeding even if it lacked jurisdiction over the owner. There are obvious problems with this suggestion, *cf.* Fed.R.Civ.P. 81(a)(3), 19(b) (indispensable parties), but the issue may never arise, and if it does the district court should address it first.

11. It seems that consolidation of related arbitration proceedings would be useful, and, as stated in the text, it has found favor in several federal courts. However, this circuit has never approved the practice, and we should not do so until the matter is ripe for decision, with a record sufficient to determine whether the disputes turn on the same facts, and a district court decision upon which to focus our attention. Consequently, we emphasize that we do not now decide whether the United States Arbitration Act empowers a federal district court to order consolidation of related disputes.