The Honorable George D. BUSBEE, Governor, State of Georgia

v.

The CONTINENTAL INSURANCE COMPANY.

Civ. A. No. C81–1340.

United States District Court, N. D. Georgia, Atlanta Division.

Dec. 1, 1981.

---

Arthur K. Bolton, Atty. Gen., Isaac Byrd, Asst. Atty. Gen., Atlanta, Ga., for plaintiff.

John W. Hinchey and Lynn M. Schubert, Phillips, Hart & Mozley, Atlanta, Ga., for defendant.

## ORDER

ORINDA D. EVANS, District Judge.

This action is a dispute between an agency of the State of Georgia and a surety on a bond furnished pursuant to the Georgia Surface Mining Act of 1968, Ga.Code § 43–1401 *et seq.* In 1975, the Director of the Division of Environmental Protection of the Department of Natural Resources of the State of Georgia (the "Director") issued a surface mining permit to The Gregory Co., Inc. and ISCO, Inc. d/b/a GREGISCO, under the provisions of Ga.Code § 43–1406(a). In connection with that permit, and as required by Ga.Code § 43–1406(c), Defendant Continental Casualty Company ("Continental") issued a surety bond in favor of the Governor of the State of Georgia to ensure the reclamation of the mined lands. The Governor of Georgia brought this action on the surety bond in the Superior Court of Fulton County, and Continental removed the case to this Court. The Governor contends that this Court does not have jurisdiction over this action and moves that the action be remanded to the state court.

Continental asserts that this Court has jurisdiction under three different federal statutes. First, Continental argues that the parties are citizens of different states and the amount in controversy exceeds $10,000, and so there is diversity jurisdiction under 28 U.S.C. § 1332(a). Second, Continental cites 28 U.S.C. § 1352, which grants this Court jurisdiction over actions on bonds executed pursuant to a federal law, and argues that the bond at issue was issued pursuant to the federal Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1259. Finally, Continental asserts federal question jurisdiction under 28 U.S.C. § 1331(a), contending that the federal regulatory scheme set up by the Surface Mining Control and Reclamation Act of 1977 governs this action. Because the Court has original jurisdiction of this action under these three statutes, Continental ar-

gues, the action was properly removed from the state court under 28 U.S.C. § 1441(a). The Court will consider each of these three theories of jurisdiction in turn.

▮▮▮▮ The Governor responds to Continental's diversity jurisdiction argument by characterizing this action as one between Continental and the State of Georgia. Under the provisions of Ga.Code § 43–1406(c), any recovery against Continental would accrue to the benefit of the Director, who would "expend as he deems appropriate that portion of such recovered or forfeited funds as is necessary to complete such mining operator's [reclamation] responsibilities." It is undeniably true, then, that the Governor is merely a nominal plaintiff, and that he will not personally benefit from any recovery on the bond. An action brought by a state official in his own name for the benefit of the state is properly characterized as an action by the state itself. *Craig v. Southern Natural Gas Co.*, 125 F.2d 66, 67 (5th Cir. 1942).[1] A state is not a citizen for purposes of diversity jurisdiction. *Postal Telegraph Cable Co. v. Alabama*, 155 U.S. 482, 487, 15 S.Ct. 192, 194, 39 L.Ed. 231 (1894). On this basis, the Governor argues that there is no diversity jurisdiction.

▮▮▮▮ However, the mere fact that the Governor is not the real party in interest does not end the inquiry. Continental counters with the argument that the State of Georgia is not the real party in interest either; that distinction belongs to the Director, who will have sole authority to expend any recovered funds "as he deems appropriate" under Ga.Code § 43–1406(c). Continental points to a line of cases that hold that various political subdivisions, state commissions and public authorities are considered citizens for the purpose of diversity jurisdiction if they are not "alter ego[s]" of the state. *C. H. Leavell & Co. v. Board of Commissioners of the Port of New Orleans*, 424 F.2d 764 (5th Cir. 1970). The Director's agency, the Division of Environmental Protection of the Department of Environmental Resources (the "Division"), is not the alter ego of the State of Georgia, Continental contends, and consequently it is a citizen of Georgia for purposes of diversity jurisdiction.[2]

The Fifth Circuit recently outlined the proper approach to the determination of the alter ego status of a state agency in *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co.*, 625 F.2d 22 (5th Cir. 1980). *Huber, Hunt* was a contract dispute arising from the construction of the Louisiana State University Medical Center and Education Building. The owner of this facility was "the State of Louisiana, Division of Administration"; the court identified the Division of Administration is "an arm of the governor's office." *Id.* at 23. The "refined question" facing the court was "whether the owner is the alter ego of the state or an independent agency."[3] *Id.* at 24. The resolution of this question is a matter of state law. *Id.*, citing *Louisiana Land & Exploration Co. v. State Mineral Board*, 229 F.2d 5, 7 (5th Cir.), *cert. denied*, 351 U.S. 965, 76 S.Ct. 1029, 100 L.Ed. 1485 (1956). *Accord, C. H. Leavell*, 424 F.2d at 776. *Cf. Louisiana Highway Commission v. Farnsworth*, 74 F.2d 910 (5th Cir.), *cert. denied*, 294 U.S. 729, 55 S.Ct. 638, 79 L.Ed. 1259 (1935) (holding the Highway Commission to be an independent entity on the basis of a Louisiana Supreme Court decision to that effect).

---

1. Plaintiff makes much of Ga.Code § 91–405, which authorizes the Governor to bring suits on debts owed to the state in the state courts "with the same rights as any citizen." Even assuming arguendo that this statute applies to suits in the federal court, it has no effect on the question of the identity of the real party in interest, a determination made under federal law.

2. It is undisputed that Continental is incorporated in New Hampshire and has its principal place of business in New York. It is also undisputed that the bond at issue is for $104,000. If the Division is a citizen of Georgia for purposes of diversity jurisdiction, then all the requirements of 28 U.S.C. § 1331(a) are satisfied and diversity jurisdiction exists.

3. The *Huber, Hunt* court did not resolve the question of the status of the Division of Administration, but remanded it to the District Court.

As in *Huber, Hunt,* the parties in this action have cited no state court opinions on the status of the Division, nor has the Court discovered any state court precedent in its independent research. In the absence of direct assistance from the state courts, the Court must next consider the characteristics of the agency under the law of the state. In *Huber, Hunt,* the Fifth Circuit suggested that the District Court consider whether the agency could hold and use property, sue and be sued in its own name, the extent of its independent management authority, and the treatment of the agency by the state courts. *Huber, Hunt,* 625 F.2d at 25. Faced with the identical question concerning the status of a California county in *Moor v. County of Alameda,* 411 U.S. 693, 93 S.Ct. 1785, 36 L.Ed.2d 596 (1973), the Supreme Court cited the first three *Huber, Hunt* factors and several others, including the right to issue bonds and impose taxes, in finding the county an independent agency. *Id.* 411 U.S. at 719–20, 93 S.Ct. at 1800–01. Plaintiff here contends that the Division is "unquestionably an agency or part of the Executive Branch of the Government of the State of Georgia," Reply Brief filed September 8, 1981 at 3, but that is not the point; the Court must look "beyond simpl[e] . . . generalization" to make a "detailed examination" of the powers of the Division. *Moor,* 411 U.S. at 719, 93 S.Ct. at 1800. *Cf. Department of Highways v. Morse Bros. & Associates,* 211 F.2d 140, 143 (5th Cir. 1954) (holding that a mere change in the name of the Louisiana Highway Commission to the Department of Highways would not reverse the holding of *Farnsworth, supra,* that the agency was not an alter ego, in the absence of any "lessening . . . of its power and authority.")

The most salient characteristic in determining whether an entity is an alter ego of the state is its capacity to sue and be sued in its own name. *See, e. g., Moor,* 411 U.S. at 719, 93 S.Ct. at 1801 ("most notably, under California law, a county is given 'corporate powers' and is designated a 'body corporate and politic.' In this capacity, a county may sue and be sued. . . ." (citations omitted)); *Kirby Lumber Corp. v. Louisiana,* 293 F.2d 82, 86 (5th Cir. 1961) (power to sue and be sued one of only two characteristics cited by court in holding entity to be independent); *Parks v. Carriere Consolidated School District,* 12 F.2d 37, 38 (5th Cir. 1926) ("a mere bureau or department of a state government cannot sue in its own name. . . ."). The Georgia Surface Mining Act of 1968 and the regulations issued thereunder give the Division a limited power to bring lawsuits.[4] However, it is not clear whether such suits are to be brought in the Director's own name. The statutes and regulations do specify that "the Director" can bring these actions, but they do not specify whether he does so in his name or that of the State, and apparently the Director has never brought such a suit. Furthermore, it is obvious from the caption of this case that for purposes of Ga.Code § 43–1406(c), the statute at issue here, the Director is *not* authorized to sue in his own name. Section 43–1406(c) provides that the bond required in connection with surface mining permits be made payable to the Governor, not the Director, and hence the Governor must sue to enforce it. Furthermore, it is not at all obvious that the Georgia Surface Mining Act of 1968 authorizes suits *against* the Director in his own name. The limited power of the Director to sue and be sued, the Court finds, provides little guidance on the alter ego question.

The Director's power to take property in his own name is also limited. Ga.Code § 43–1414(a) provides for the assessment of civil penalties for violation of orders of the Director. Under section 43–1414(c), however, all such penalties are paid into the

---

4. Ga.Code § 43–1415 gives the Director the power to "file in the superior court . . . a certified copy of a final order issued pursuant to this chapter . . . whereupon said court shall render judgment in accordance therewith." Under Ga.Rules & Regs. § 391–3–3.01(4)(h), the Director has the authority to "institute and prosecute all such court actions as are necessary to obtain the enforcement of any order issued by the Director in carrying out the provisions of the act," while § 391–3–3.0(4)(i) gives him the power "to seek civil penalties in accordance with the Act."

state treasury, with the exception of those assessed for failure to obtain section 43–1406 permits or recovered from bonds issued in connection with such permits. While any recovery in this case would accrue to the benefit of the Director rather than the State, this appears to be the exception rather than the rule. Furthermore, Ga.Code § 91–112a, which provides for acquisition of real property by state agencies, apparently requires that the Division acquire real property through the State Properties Commission. If anything, the Director's very limited power to take property in his own name cuts against alter ego status.

Unlike the California county in *Moor*, the Division is not designated a "body corporate or politic" by state law. It is not liable for judgments against it, nor can it levy taxes. It cannot provide "a variety of public services," nor can it issue bonds. *Moor*, 411 U.S. at 719–20. Furthermore, the Division is required to rely on the State Attorney General for legal counsel and representation. Ga.Code § 40–1614. Its employees are protected by the state civil service law. Ga.Code § 40–2202(a)(3). It is the Court's opinion that the "detailed examination" of the powers of the Division required by *Moor* reveals that the Division is merely the alter ego of the state. Therefore, because the State of Georgia, the real plaintiff, is not a Georgia citizen for purposes of diversity, the Court holds that it has no jurisdiction under 28 U.S.C. § 1332(a).

■ Continental next argues that the Court has jurisdiction under 28 U.S.C. § 1352, which authorizes the Court to hear "any action on a bond executed under any law of the United States." The bond at issue, Continental argues, is required by the federal Surface Mining Control and Reclamation Act of 1977, 30 U.S.C. § 1259. However, the bond was executed prior to the passage of the Surface Mining Control and Reclamation Act of 1977. The Surface Mining Control and Reclamation Act of

1977 contains no indication that Congress intended it to apply retroactively, nor does its legislative history indicate any such congressional intent. Continental argues that by its own terms the federal law supersedes Ga.Code § 43–1406(c) because the state law is a "inconsistent" with the stricter federal law. *See* 30 U.S.C. § 1255. Even if section 43–1406(c) were superseded by the Surface Mining Control Act,[5] that would not change the fact that the bond was not "executed under any law of the United States." "Execution" is the operative term in 28 U.S.C. § 1352, and at the time of the execution of this bond the federal Surface Mining Control and Reclamation Act of 1977 did not exist.

Finally, Continental contends that the Court has federal question jurisdiction under 28 U.S.C. § 1331(a). Continental's briefs on this point appear to suggest three possible views of the federal question involved in this case.

■ First, Continental notes the existence of a "federal regulatory scheme which controls and may override the State laws and regulations in question." Petition for Removal at 3. The Surface Mining Control and Reclamation Act of 1977 does contemplate that each state will submit a program for the regulation of surface mining to the Secretary of the Interior, 30 U.S.C. § 1253, and that the Secretary of the Interior will promulgate federal programs for each state that fails to submit such a program. 30 U.S.C. § 1254. However, apparently the Interior Department has not yet adopted either a state or a federal program for the State of Georgia. In the absence of such a plan, there presently exists no "federal regulatory scheme" applicable to surface mining in Georgia.

■ Second, Continental contends that Ga.Code § 43–1406(a) is less stringent than and hence inconsistent with the bond requirement of the federal law, 30 U.S.C. § 1259. Therefore, under 30 U.S.C.

---

**5.** The Court holds later in this opinion that section 43–1406(c) has not yet been superseded    by federal law.

§ 1255(b), the state law is superseded by the federal and this action arises under 30 U.S.C. § 1259. However, the Surface Mining Control and Reclamation Act of 1977 by its own terms supersedes only those state laws specifically designated as inconsistent by the Secretary of the Interior. 30 U.S.C. §§ 1254(g), 1255(b). Interior Department regulations contemplate that this designation would occur in the Federal Register in connection with the Department's promulgation of a program for a state. 30 C.F.R. § 736.23(a). The Secretary of the Interior has never designated Ga.Code § 43-1406(c) as inconsistent with 30 U.S.C. § 1259, and therefore the state law has not yet been superseded by the federal.[6] Consequently this action does not arise under 30 U.S.C. § 1259.

▮ Finally, Continental suggests that one of its defenses of law raises a federal issue. It is hornbook law that the existence of a federal law defense is insufficient to provide jurisdiction under 28 U.S.C. § 1331(a). *Louisville & Nashville Railroad Co. v. Mottley*, 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Tennessee v. Union & Planters' Bank*, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894); 13 C. Wright, Miller, Cooper et al., *Federal Practice and Procedure* § 3566, at 434 (1975); P. Bator et al., *Hart and Wechler's The Federal Courts and the Federal System* 883 (2d ed. 1973). In determining whether a case "arises under" federal law for the purposes of section 1331(a), the Court must decide where the asserted right arises. The classic formulation of this test comes from the pen of Justice Holmes: "A suit arises under the law that creates the cause of action." *American Well Works Co. v. Layne & Bowler Co.*, 241 U.S. 257, 260, 36 S.Ct. 585, 586, 60 L.Ed. 987 (1916). *See also Gully v. First National Bank*, 299 U.S. 109, 115-16, 57 S.Ct. 96, 98-99, 81 L.Ed. 70 (1936). The law that creates the Governor's cause of action against Continental is the state law of contract; this is, in essence, a suit to enforce a surety bond. The fact that the legal theo-

ries of Defendant Continental may depend in part or in whole upon the federal Surface Mining Control and Reclamation Act of 1977 is irrelevant if state law creates the cause of action. *American Well Works*, 241 U.S. at 259-60, 36 S.Ct. at 586. The Court holds that this case does not "arise under" federal law within the meaning of 28 U.S.C. § 1331(a).

Because the Court would not have original jurisdiction over this suit, the requirements of 28 U.S.C. § 1441(a) were not satisfied, and removal to this Court was improper. The Court REMANDS this action to the Superior Court of Fulton County, Georgia.

---

**6.** Whether the state law is less stringent than 30 U.S.C. § 1259, and therefore inconsistent under the terms of 30 U.S.C. § 1255(b), is a question which the Court need not and does not reach.