IOWA VALLEY COMMUNITY
COLLEGE DISTRICT,
Plaintiff,

v.

PLASTECH EXTERIOR SYSTEMS,
INC. f/k/a UNITED SCREW AND
BOLT CORPORATION, Defendant.

Plastech Exterior Systems, Inc. F/K/A
United Screw and Bolt Corporation,
Third–Party Plaintiff,

v.

Iowa Department of Revenue and
Finance, Third–Party
Defendant.

No. 4:02–CV–40025.

United States District Court,
S.D. Iowa,
Central Division.

April 1, 2003.

Joel T. Greer, Cartwright Druker & Ryden, Marshalltown, IA, for Plaintiff.

Patrick M. Roby, Robert M. Hogg, Elderkin & Pirnie PLC, Cedar Rapids, IA, for Defendant.

## AMENDED * RULING ON THIRD–PARTY DEFENDANT'S MOTION TO DISMISS

GRITZNER, District Judge.

This matter is before the Court on Third–Party Defendant's Motion to Dis-

* This "Amended" ruling corrects a typographi-cal error in the second paragraph of Section

miss. Third–Party Plaintiff resists, and Third–Party Defendant filed a reply. Oral argument was not requested by either party. The motion is fully submitted.

## I. BACKGROUND

On October 9, 1996, pursuant to Iowa Code Chapter 260E, Iowa Valley Community College District a/k/a Merged Area VI ("IVCCD") and the Iowa Department of Revenue and Finance ("Department") entered into an Industrial New Jobs Training Agreement ("Agreement") with Plastech Exterior Systems, Inc. f/k/a United Screw and Bolt Corporation ("Plastech"). Under the Agreement, IVCCD would educate and train new Plastech employees in new jobs in connection with the expansion of Plastech's business operations within Merged Area VI. As part of the Agreement, the Department approved supplemental new job credits from Plastech's state withholding taxes pursuant to Section 15.331 of the Iowa Code. In addition, the Department approved new job credits from Plastech's state withholding taxes set forth pursuant to Iowa Code Chapter 260E.5. Project costs of the Agreement would be funded from both of these state withholding tax payments which were to be diverted directly to IVCCD.[1]

On December 20, 2001, IVCCD filed a petition at law against Plastech in the Iowa District Court in and for Marshall County. In its petition, IVCCD alleged it was a "political subdivision" of the State. IVCCD's complaint alleged that Plastech had breached the contract by, among other things, its nonpayment of $465,798 due under the contract.

On January 10, 2002, Plastech removed the action pending in the Iowa District Court to the United States District Court for the Southern District of Iowa pursuant to 28 U.S.C. § 1441. According to Plastech's notice of removal, the basis of federal jurisdiction was diversity jurisdiction under 28 U.S.C. § 1332. IVCCD did not object to the removal.

On October 7, 2002, Plastech filed a third-party complaint against the Department involving a claim of indemnity based upon breach of contract, estoppel, and unjust enrichment. Plastech alleges that under the terms of the Agreement, the withholding taxes Plastech paid to the State of Iowa should have been diverted directly to IVCCD, and, if that had been done, it would have substantially reduced Plastech's contractual obligation. Plastech further contends that if IVCCD recovers against Plastech, it will seek indemnification from the Department in the amount that should have been diverted to IVCCD.[2]

---

I. IVCCD filed its petition against Plastech in the Iowa District Court in and for Marshall County on December 20, 2001, not 2002 as previously stated.

1. According to a letter dated June 6, 2000, from Jim McNulty, Program Manager at the Department, to Plastech, Department records show that Plastech paid $216,278.29 in withholding taxes to the State of Iowa from September 1, 1996, through August 31, 1998. Between September 1, 1998, and April 30, 2000, no Iowa withholding taxes were paid as all monies were diverted to IVCCD.

2. During the period of September 1, 1996, through August 31, 1998, Plastech alleges it

paid state withholding taxes to the Department in the amount of approximately $219,392.00 and that these funds were never diverted to IVCCD. The June 6, 2000, letter from the Department acknowledges that Plastech's withholding tax payments for that period were not diverted to IVCCD. Therefore, the Department recognized that there was a $100,000 shortage due to IVCCD. In addition, the Department said it would consider a proposal by Plastech on how to seek reimbursement of this shortfall. The record is unclear whether Plastech submitted such a proposal. However, the record does indicate that Plastech did file a protest to the Department's denial of Plastech's claim for a refund of these withholding taxes.

On October 31, 2002, the Department filed a motion to dismiss the third-party complaint, contending there is a lack of subject matter jurisdiction based upon Eleventh Amendment immunity, the Tax Injunction Act, and principles of comity.

All claims and counterclaims between Plastech and IVCCD were subsequently settled. Those claims were dismissed with prejudice on March 27, 2003. Only the claim between Plastech and the Department remains.

## II. ANALYSIS

### A. Eleventh Amendment Immunity

▮ The Eleventh Amendment to the United States Constitution provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens of Subjects of any Foreign State." The United States Supreme Court has consistently held that "an unconsenting State is immune from suits brought in federal courts by her own citizens as well as by citizens of another State." *Edelman v. Jordan*, 415 U.S. 651, 663, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974). The Eleventh Amendment has been interpreted to ban almost entirely suits in federal court against unconsenting States. *Raper v. Iowa*, 940 F.Supp. 1421, 1424 (S.D.Iowa 1996) (quoting *Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996)). The Eleventh Amendment's immunity "encompasses not only actions in which a State is actually named as the defendant, but also certain actions against state agents and state instrumentalities." *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429, 117 S.Ct. 900, 903, 137 L.Ed.2d 55 (1997); *see also Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 104 S.Ct. 900, 908, 79 L.Ed.2d 67 (1984) (holding that "in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment"). A suit against a State or one of its agencies or departments brought in federal court is proscribed by the Eleventh Amendment regardless of the nature of the relief sought. *Van Pilsum v. Iowa State Univ. of Sci. & Tech.*, 863 F.Supp. 935, 939–40 (S.D.Iowa 1994). As a result, the rule is "that a suit by private parties seeking to impose a liability which must be paid from public funds in the state treasury is barred by the Eleventh Amendment." *Edelman*, 415 U.S. at 663, 94 S.Ct. 1347.

▮ In the present case, Plastech filed a third-party suit against the Iowa Department of Revenue and Finance, clearly a state agency. *See In re Palm*, 286 B.R. 710, 714 (Bankr.N.D.Iowa 2002) (holding that the Illinois "Department of Revenue is entitled to the same Eleventh Amendment immunity enjoyed by the State of Illinois"). Moreover, the relief requested, indemnification, will be paid from public funds in the state treasury. Consequently, the State is the real party in interest, and the Court finds the Department would be protected from Plastech's suit in federal court under Eleventh Amendment immunity.

### B. Waiver of Eleventh Amendment Immunity by Department Contracting with Plastech

▮ Plastech alleges even if the Eleventh Amendment would immunize the Department from suit in federal court, the Department waived this immunity and consented to suit in federal court by contracting with Plastech. While it is true that a State may waive its Eleventh Amendment immunity, the test is stringent. *See Coll. Sav. Bank v. Fla. Prepaid Postsecondary Education Expense Bd.*,

527 U.S. 666, 675–76, 119 S.Ct. 2219, 2226, 144 L.Ed.2d 605 (1999). Although a State's general waiver of sovereign or governmental immunity may subject it to suit in state court, it is not enough to waive the constitutional immunity guaranteed by the Eleventh Amendment. *Fla. Dept. of Health v. Fla. Nursing Home Assn.*, 450 U.S. 147, 150, 101 S.Ct. 1032, 1034, 67 L.Ed.2d 132 (1981). "Thus, a State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation." *Coll. Sav. Bank*, 527 U.S. at 676, 119 S.Ct. 2219; *Pennhurst*, 465 U.S. at 99 n. 9, 104 S.Ct. 900. "A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued." *Pennhurst*, 465 U.S. at 99, 104 S.Ct. 900.

Plastech urges this Court to follow *Greiner v. Gunnar A. Olsen Corp.*, which held that by entering into a contract, the State of Iowa consented to federal court jurisdiction for claims arising out of that contract. *Greiner v. Gunnar A. Olsen Corp.*, 498 F.Supp. 908, 909 (N.D.Iowa 1976). However, more recently, this Court expressly disagreed with the holding and rationale of *Greiner* and held that the State did not waive its Eleventh Amendment immunity or consent to suit in federal court by entering into a contract. *Prueitt v. Boone County*, 599 F.Supp. 278, 279–80 (S.D.Iowa 1984) (dismissing defendant's third-party complaint seeking indemnity against the State of Iowa). This Court finds the more recent and better supported and reasoned decision of *Prueitt* to be controlling.

First, *Greiner* relied upon *Kersten Co. v. Department of Social Services*, which held that "the State, by entering into a contract, waives its defense of governmental immunity and consents to be sued." *Kersten Co. v. Dept. of Soc. Servs.*, 207 N.W.2d 117, 122 (Iowa 1973). However, *Kersten* only reached the waiver of governmental immunity in state court; it did not consider whether waiving sovereign immunity thereby waives Eleventh Amendment immunity. *Id.* at 122; *see also Prueitt*, 599 F.Supp. at 280.

Second, the court in *Greiner* also relied on *Kersten*'s citation to *Na–Ja Construction Corp. v. Roberts*, which held that the defendant county government waived its sovereign immunity. *Na–Ja Constr. Corp. v. Roberts*, 259 F.Supp. 895, 896 (D.Del. 1966). According to *Greiner*, "[t]he citation of *Na–Ja* would indicate [Kersten's] understanding that the new remedy would also be available in federal court." *Greiner*, 498 F.Supp. at 909. However, the defendant in *Na–Ja* was a county government, which is not entitled to Eleventh Amendment immunity. *Greenwood v. Ross*, 778 F.2d 448, 453 (8th Cir.1985); *see also Prueitt*, 599 F.Supp. at 280. "Recognizing this, the *Na–Ja* court implied that, if the defendant had been an arm of state government, it would *not* have found a waiver of immunity from suit for breach of contract to include a waiver of immunity from suit in federal court." *Prueitt*, 599 F.Supp. at 280 (citing *Na–Ja*, 259 F.Supp. at 899). It is clear that in the present case the Department is an arm of the state that under *Na–Ja* would not have waived its immunity from suit in federal court.

Finally, *Greiner* also relied on *Markham v. City of Newport News*, which stated that "whenever a state provides a substantive right and a remedy for its enforcement in a judicial proceeding in any state court, a judicial controversy involving the right may be adjudicated by a United States District Court if it has jurisdiction under the Constitution and laws of the United States." *Markham v. City of Newport News*, 292 F.2d 711, 716 (4th Cir.1961). However, *Prueitt* found that language was taken out of context by the *Greiner* court. *Prueitt*, 599 F.Supp. at 281. First, "*Mark-*

*ham* involved state usurpation of federal judicial power, while *Greiner* involved state relinquishment of immunity." *Id.* Second, the court in *Markham* also stated "[a] state enjoying the protection of the Eleventh Amendment to the Constitution of the United States, of course, may consent to be sued in her own courts without waiving her immunity to suits in the federal courts." *Markham*, 292 F.2d at 716.

According to *Prueitt*, a failure to draw the distinction, recognized in *Markham*, "between sovereign immunity and Eleventh Amendment immunity would seem to account for the holding in *Greiner*." *Prueitt*, 599 F.Supp. at 281. The distinction was succinctly expressed by the Supreme Court. A State does not consent to suit in federal court merely by consenting to suit in the courts of its own creation. *Coll. Sav. Bank*, 527 U.S. at 676, 119 S.Ct. 2219; *Pennhurst*, 465 U.S. at 99 n. 9, 104 S.Ct. 900. Consequently, regardless of whether the Department's action of entering into a contract waived its sovereign immunity in state court, it is not determinative of whether the Department waived its Eleventh Amendment immunity from suit in federal court. Therefore, the Court finds the Department did not waive its Eleventh Amendment immunity by entering into a contract with Plastech.

## C. Waiver of Eleventh Amendment Immunity by the actions of IVCCD

Plastech also argues that because IVCCD is an arm of the state, it waived the State's Eleventh Amendment immunity by contracting with Plastech, initiating the lawsuit, and failing to object to the removal of the case to federal court. While Plastech argues that it is well established that a community college is treated as an arm of the state for purposes of Eleventh Amendment immunity, existing case law does not provide unanimous support for Plastech's contention. *Compare*

*Stones v. L.A. Cmty. Coll. Dist.*, 572 F.Supp. 1072, 1076–78 (C.D.Cal.1983) (holding that where, under state law, the legislature retained a large degree of control over community college and substantially all of the college's funding was derived from state itself, the college is an arm of the state for purposes of the Eleventh Amendment) *with Griner v. Southeast Cmty. Coll.*, 95 F.Supp.2d 1054, 1057 (D.Neb.2000) (holding that a community college is not an arm of the state for purposes of the Eleventh Amendment where the college is controlled mostly by a locally elected board which has the right to levy taxes). Rather, "[w]hile '[s]tate universities and colleges almost always enjoy Eleventh Amendment immunity,' such immunity is not so apparent for community colleges due to local political and financial involvement in community colleges." *Griner*, 95 F.Supp.2d at 1057 (quoting *Hadley v. North Ark. Cmty. Tech. Coll.*, 76 F.3d 1437, 1438 (8th Cir.1996), *cert. denied*, 519 U.S. 1148, 117 S.Ct. 1080, 137 L.Ed.2d 215 (1997)).

It appears that whether an Iowa community college is an arm of the state for the purposes of Eleventh Amendment immunity is an issue of first impression. The Eighth Circuit's approach for deciding whether a particular institution of higher learning is entitled to Eleventh Amendment immunity requires this Court to: "[E]xamine the particular entity in question and its powers and characteristics as created by state law to determine whether the suit is in reality a suit against the state. Courts typically look at the degree of local autonomy and control and most importantly whether the funds to pay any award will be derived from the state treasury." *Hadley*, 76 F.3d at 1439.

As set forth under Iowa law, community colleges in Iowa "shall be a body politic as a school corporation for the purpose of exercising powers granted under this

chapter, and as such may sue and be sued, hold property, and exercise all the powers granted by law and such other powers as are incident to public corporations of like character and are not inconsistent with the laws of the state." Iowa Code § 260C.16. Iowa community colleges are governed by an elected board of directors which has a great deal of autonomy and control. *See* Iowa Code §§ 260C. 11 (locally elected board of directors), 260C.14 (ability to set tuition, enter into contracts, and autonomy over curriculum and facilities), 260C.17 (ability to acquire operating funds from local sources including a "tax of twenty and one-fourth cents per thousand dollars of assessed value on taxable property in a merged area for the operation of a community college"). As in *Griner*, it does not appear that Iowa "would necessarily be liable for payment of a judgment rendered against [IVCCD]." *Griner*, 95 F.Supp.2d at 1059 (holding that community college was not arm of the state).

In sum, the structure and powers of community colleges in Iowa are more akin to those state community colleges which have been held not to be an arm of the state. *See Hander v. San Jacinto Junior Coll.*, 519 F.2d 273, 279 (5th Cir.1975) (holding that a community college was not an arm of the state when the college had power to issue revenue bounds and levy taxes, the electorate selected the board of trustees and the state appropriated money to the college's supplemented local funds); *Gardetto v. Mason*, 854 F.Supp. 1520, 1543–44 (D.Wyo.1994) (holding that a community college was not an arm of the state when the college had authority to charge tuition and student fees). Community colleges that have been treated as an arm of the state have been subject to more control and oversight by the state as well as often being classified as a state agency. *See, e.g., Hadley*, 76 F.3d at 1438. Iowa community colleges have not been considered a state agency in other governmental contexts. *Graves v. Iowa Lakes Cmty. Coll.*, 639 N.W.2d 22, 26 (Iowa 2002) (holding that for purposes of the State Tort Claims Act, community colleges are not defined as a state agency); *Stanley v. Southwestern Cmty. Coll. Merged Area*, 184 N.W.2d 29, 33–4 (Iowa 1971) (holding that for purposes of incurring indebtedness or pledging credit, community colleges are not agencies of the state).

 As IVCCD alleged in its petition at law and as Plastech stated in its notice of removal, IVCCD is a political subdivision of the state. Eleventh Amendment immunity does not extend to independent political subdivisions created by the State. *Mt. Healthy City Bd. of Ed. v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977) (holding that Ohio school districts are like political subdivisions and therefore do not have Eleventh Amendment immunity); *Hadley*, 76 F.3d at 1438. Because IVCCD is not considered an arm of the state, it is not entitled to Eleventh Amendment immunity. As a result, IVCCD's actions could not waive the State's Eleventh Amendment immunity.[3] Rather, only the actions of the De-

---

**3.** Assuming arguendo that IVCCD is an arm of the state, it follows that there would be no waiver of the State's Eleventh Amendment immunity. As noted, contracting with Plastech would not be enough to waive Eleventh Amendment immunity. IVCCD initiated the lawsuit in state court, not federal court; and the waiver of immunity to be sued in state court does not waive the Eleventh Amendment immunity in federal court. IVCCD's failure to object to the removal does not warrant a finding of waiver. Unlike *Lapides v. Board of Regents of the University System of Georgia*, where the state removed the case to federal court, IVCCD did not actively or voluntarily seek litigation in federal court. *See Lapides v. Bd. of Regents of the Univ. Sys. of Ga.*, 535 U.S. 613, 122 S.Ct. 1640, 1642, 152 L.Ed.2d 806 (2002).

Separately, if IVCCD were to be found an arm of the state, removal would have been

partment could waive the State's Eleventh Amendment immunity. As previously discussed, the Department has not waived Eleventh Amendment immunity by entering into the contract with Plastech. *See Prueitt,* 599 F.Supp. at 280.

### III. CONCLUSION

The Department has shown that Eleventh Amendment immunity applies to the Department, and that immunity was not waived. The motion to dismiss the third-party defendant (Clerk's No. 16) is **granted.**[4]

**IT IS SO ORDERED.**

improper and the case should be remanded to state court. *See* 28 U.S.C. § 1447(c). "[A] State is not a "citizen" for the purposes of diversity jurisdiction." *Moor v. County of Alameda,* 411 U.S. 693, 717, 93 S.Ct. 1785, 1800, 36 L.Ed.2d 596 (1973). "[I]f an agency, commission, or political subdivision that is party to a suit is an arm of the State, that entity similarly does not qualify as a "citizen" who can sue and be sued in federal court under 28 U.S.C. § 1332." *Id. See, e.g., Iowa Comprehensive Petroleum Underground Stor-* *age Tank Fund Bd. 990C80656 v. Amoco Oil Co.,* 883 F.Supp. 403, 422 (N.D.Iowa 1995); *Busbee v. Cont'l Ins. Co.,* 526 F.Supp. 1243, 1245, 1247 (N.D.Ga.1981).

**4.** In its motion to dismiss, the Department also alleged that federal jurisdiction was barred under a second, distinct ground, the Tax Injunction Act. Because the Court has determined federal jurisdiction is barred by Eleventh Amendment immunity, it does not reach the tax injunction argument.