**Milton G. BRADY and Carolyn Abbot Brady, Plaintiffs,**

v.

**MICHELIN REIFENWERKE, American Honda Motor Company, Inc., Honda of Japan and Mississippi State Highway Department, Defendants.**

Civ. A. No. S84–0146(R).

United States District Court, S.D. Mississippi, S.D.

July 22, 1985.

William T. Reed, Pascagoula, Miss., James A. Dukes, Hammond, La., for plaintiffs.

Rae Bryant, Gulfport, Miss., Joe R. Colingo, Pascagoula, Miss., John M. Kenney, Garden City, N.Y., for defendant Michelin Reifenwerke.

Lawrence J. DuPlass, Johnston & Du-Plass, New Orleans, La., James B. Galloway, Eaton, Cottrell, Galloway & Lang, Gulfport, Miss., for defendant American Honda Motor Co., Inc.

Hugh D. Keating, Gulfport, Miss., Edwin Lloyd Pitmman, ex rel. Atty. Gen. of Mississippi, P.O. Gibson, Jr., Asst. Atty. Gen., Jackson, Miss., Billy W. Hood, Bryan, Nelson, Allen, Schroeder & Cobb, Gulfport, Miss., for defendant Miss. State Hwy. Dept.

## MEMORANDUM OPINION

DAN M. RUSSELL, Jr., Senior District Judge.

### INTRODUCTION

This cause of action arises out of an automobile accident which occurred on July 16, 1981 near Pascagoula, Mississippi on Interstate 10. In this diversity action the plaintiffs, the parents of Brett Anthony Brady, deceased, allege that the accident was caused by the failure and blow-out of a tire and that the defendants, with the exception of the Mississippi State Highway Commission (MSHC), are liable in negligence and strict liability for a defect in the tire. The allegations pertaining to MSHC relate to the Highway Commission's unfortunate parking of one of their vehicles, a truck, in the right safety lane on the Dog River Bridge on I–10. When the alleged blow-out occurred the automobile veered to the right and collided with the parked Highway Commission truck, killing the driver, Charles A. Moore, and the passenger, Brett Anthony Brady.

The cause presently before the Court is the defendant Mississippi State Highway Commission's motion to dismiss, or in the alternative, for summary judgment. Specifically, the defendant has two propositions: (1) that this Court lacks jurisdiction over the defendant because the eleventh amendment limits this Court's judicial power in suits by private citizens against a state; and (2) that even if the suit is not barred by the eleventh amendment, the defendant is entitled to summary judgment as a matter of law since the MSHC had a legal right to be in and use the safety lane on the bridge. The plaintiffs counter the defendant's contentions with the argument that the MSHC is not entitled to eleventh amendment immunity because: (1) it has expressly waived such immunity by statute; (2) the suit will not affect the state treasury in light of the Highway Commission's purchase of liability insurance; and (3) the MSHC has independent autonomous powers such that it is not clothed with the immunity granted the state. As a final countermeasure the plaintiffs assert that the question of whether the MSHC had a right to be on the bridge in a safety lane is a question of fact for the jury.

### DISCUSSION

The defendant's motion to dismiss under Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction requires that the Court examine the basis for its jurisdiction. *Menchaca v. Chrysler Credit Corp.*, 613 F.2d 507 (5th Cir.1980). The federal courts of the United States must endeavor to honor

the jurisdiction conferred upon them by Congress and permitted them by the Constitution. *In re Carter*, 618 F.2d 1093 (5th Cir.1980); C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure, § 3522 (1984). Therefore, the Court will first examine its own subject matter jurisdiction before delving into the defendant's alternative motion for summary judgment. *See Hitt v. City of Pasadena*, 561 F.2d 606 (5th Cir.1977).

## I.

Because of the nature of the beast the Court must first discuss the plaintiffs' third contention that the MSHC is an independent, autonomous agency and not an alter ego of the state. If MSHC is the latter, a state instrumentality, then a question of eleventh amendment protection arises. If MSHC is not an alter ego of the state, but is an independent agency, the eleventh amendment is inapplicable.[1]

■ The eleventh amendment to the United States Constitution provides: "The judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of Another State, or by Citizens or Subjects of any Foreign State." After review of the constitutional debates the Supreme Court expressed the view that the federal judicial power over suits against a state without her consent "was not contemplated by the Constitution when establishing the judicial power of the United States." *Hans v. Louisiana*, 134 U.S. 1, 15, 10 S.Ct. 504, 507, 33 L.Ed. 842 (1890); *Monaco v. Mississippi*, 292 U.S. 313, 322–23, 54 S.Ct. 745, 747–48, 78 L.Ed. 1282 (1934). *See also Pennhurst State School & Hospital v. Halderman*, 465 U.S. 89, ——, 104 S.Ct. 900, 906, 79 L.Ed.2d 67 (1984). The federal courts can hear disputes, however, where the dispute involves

a political subdivision of the state, an independent state agency or a state official acting in his official capacity. *See e.g., Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 n. 54, 98 S.Ct. 2018, 2035 n. 54, 56 L.Ed.2d 611 (1978); *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

■ The eleventh amendment by its own language requires that the state be subject to suit before the bar to suit in federal court takes effect. *Jagnandan v. Giles*, 538 F.2d 1166, 1173 (5th Cir.1976). This requirement is satisfied if, for all intents and purposes, the suit is against the state. *Id. See also Aerojet-General Corp. v. Askew*, 453 F.2d 819, 828–29 (5th Cir.1971) *cert. denied*, 409 U.S. 892, 93 S.Ct. 110, 34 L.Ed.2d 149 (1972); *Ex parte State of New York*, 256 U.S. 490, 500, 41 S.Ct. 588, 590, 65 L.Ed. 1057 (1921).

The Fifth Circuit has stated that should the status of the defendant be unclear, as is the MSHC's here, the court must then "look to any and all available sources for guidance." *Huber, Hunt & Nichols v. Architectual Stone Co.*, 625 F.2d 22, 25 (5th Cir.1980). In *Tradigrain v. Mississippi State Port Authority*, 701 F.2d 1131, 1133 (5th Cir.1983), the court offered the following factors to consider in the evaluation.

> The court should consider whether the agency has been granted the right to hold and use property, whether it has the express authority to sue and be sued in its corporate name, the extent of its independent management authority, and 'a factor that subsumes all others,' the treatment of the agency by the state courts ... Other relevant factors might include: (1) whether the state is responsible for the agency's debt; (2) whether the agency is primarily concerned with local, as opposed to statewide problems,

---

1. The analysis of the alter ego status of an agency involves the same determination whether the question is one of immunity under the eleventh amendment or citizenship for diversity jurisdiction. *Tradigrain v. Mississippi State Port*

*Authority*, 701 F.2d 1131, 1132 (5th Cir.1983). *See also Jacintoport Corp. v. Greater Baton Rouge Port Commission*, 762 F.2d 435, 437 n. 2 (5th Cir.1985).

and (3) the degree of general financial autonomy of the agency.

*Id.* (citations omitted).

In *Tradigrain* the court, finding no constitutional or decisional law directly on point, primarily evaluated the Port Authority's enabling act, Miss.Code Ann. § 59-5-1 *et seq.*, and decided that "the Mississippi State Port Authority is merely the alter ego of the State of Mississippi...." *Tradigrain*, 701 F.2d at 1134. This Court does have the benefit of some state decisional law. With these principles in mind the Court will now embark upon a determination of whether the MSHC is an alter ego of the State of Mississippi.

The MSHC's enabling act is found at Miss.Code Ann. § 65-1-1 *et seq.* Under the act the Highway Commission is granted some of the generally recognized powers of an independent agency. For example, it may sue and be sued in its own name, Miss.Code Ann. § 65-1-8(b) (Supp. 1984); acquire by gift, purchase or condemnation, or otherwise land or other property. § 65-1-8(a) (Supp.1984); purchase necessary equipment and vehicles and to provide for the repair and housing of the same, § 65-1-8(m); and enter into contracts necessary and proper for its operation, § 65-1-8(q); § 65-1-10(b).

Factors in the statutory language which tend to establish the Highway Commission as an alter ego of the state include items such as the requirement that the Highway Commission submit a budget which is approved by legislature each fiscal year with the legislative budget office and state fiscal management board having power and authority over the Highway Commission's administrative budget. Miss.Code Ann. § 65-1-149 (Supp.1984). The books and accounts of the Highway Department are audited every six (6) months by the state auditor. Miss.Code Ann. § 65-1-113 (Supp.1984). The Highway Commission's method of expenditure of funds available for construction and reconstruction of primary and secondary roads is governed by statute. Miss.Code Ann. § 65-1-141 and § 65-1-145 (Supp.1984). In the latter cited

statute, worthy of particular mention, is the condition on expenditure of highway funds that "[n]o state monies shall be expended on any construction project unless a State Highway Department engineer shall be assigned to such project." Miss.Code Ann. § 65-1-145(2) (Supp.1984). Finally, the funds provided to the State Highway fund are required to be expended on the basis of the state's needs as a whole. Miss.Code Ann. § 65-1-112 (Supp.1984).

As in *Tradigrain* with the Mississippi State Port Authority the statute strongly suggests that the legislature considered the Highway Commission an alter ego of the state. This Court also has the benefit of Mississippi decisional law which also imports that the MSHC is an alter ego of the state. For instance, in *State Highway Commission v. Gulley*, 167 Miss. 631, 145 So. 351 (1933) the Mississippi Supreme Court held that the Highway Commission is an agency of the state. *See also Karpovs v. State of Mississippi*, 663 F.2d 640, 645 (5th Cir.1981); *State Highway Commission v. Knight*, 170 Miss. 60, 154 So. 263 (1934); *Stewart v. State Highway Commission*, 166 Miss. 43, 148 So. 218 (1933). Based upon the foregoing this Court holds that the Mississippi State Highway Commission is an alter ego of the state.

## II.

Having decided that the MSHC is an alter ego of the state the discussion proceeds next to a question of whether the state has waived its right not to be sued in federal court. The discussion begins with the case of *Chisholm v. Georgia*, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440 (1873), wherein the Court permitted a citizen of one state of the United States to sue another state in federal court without the consent of that state. The decision "literally shocked the Nation" and within five years the eleventh amendment was added to the Constitution to prevent the result in *Chisholm*. *Edelman v. Jordan*, 415 U.S. 651, 662, 94 S.Ct. 1347, 1355, 39 L.Ed.2d 662 (1974); C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure § 3524 (1984).

While Article III of the Constitution establishes the federal judicial power, the principle of sovereign immunity embodied in the eleventh amendment tightens the reigns of that power.

That a State may not be sued without its consent is a fundamental rule of jurisprudence having so important a bearing upon the construction of the Constitution of the United States that it has become established by repeated decisions of this court that *the entire judicial power granted by the Constitution does not embrace authority to entertain a suit brought by private parties against a State without consent given:* not one brought by citizens of another State, or by citizens or subjects of a foreign State, because of the Eleventh Amendment; and not even one brought by its owns citizens, because of the fundamental rule of which the Amendment is but an exemplification.

*Ex parte State of New York No. 1,* 256 U.S. 490, 497, 41 S.Ct. 588, 589, 65 L.Ed. 1057 (1921) (emphasis added).

■■■ A state's sovereign immunity is implicated even where the suit is against a state agency, official or employee. *Pennhurst,* 465 U.S. at ——, 104 S.Ct. at 907–08. *See also Florida Department of Health v. Florida Nursing Home Ass'n.,* 450 U.S. 147, 101 S.Ct. 1032, 67 L.Ed.2d 132 (1981) (*per curiam*); *Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978) (*per curiam*); *Chiz's Motel and Restaurant v. Mississippi State Tax Commission,* 750 F.2d 1305, 1307 (5th Cir.1985). A state can waive its sovereign immunity and consent to suit against it in federal court but that consent must be "unequivocally expressed." *Pennhurst,* 465 U.S. at ——, 104 S.Ct. at 907. The Supreme Court has consistently held "that a state's waiver of sovereign immunity in its own courts is not a waiver of the Eleventh Amendment immunity in the federal courts." *Pennhurst,* 465 U.S. at —— n. 9, 104 S.Ct. at 907 n. 9.

In this term the Court has announced just how unequivocal the state's waiver of eleventh amendment should be.

The test for determining whether a State has waived its immunity from federal court jurisdiction is a stringent one. Although a State's general waiver of sovereign immunity may subject it to suit in state court, it is not enough to waive the immunity guaranteed by the Eleventh Amendment. *Florida Dept. of Health v. Florida Nursing Home Ass'n.,* 450 U.S. 147, 150 [101 S.Ct. 1032, 1034, 67 L.Ed.2d 132] (1981) (*per curiam*). As we explained just last Term, 'a State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued.' *Pennhurst II, supra,* at [——] [104 S.Ct. at 907]. Thus, in order for a state statute or constitutional provision to constitute a waiver of Eleventh Amendment immunity, it must specify the State's intention to subject itself to suit in *federal court. See Smith v. Reeves,* 178 U.S. 436, 441 [20 S.Ct. 919, 921, 44 L.Ed. 1140] (1900); *Great Northern Life Insurance Co. v. Read,* 322 U.S. 47, 54 [64 S.Ct. 873, 876, 88 L.Ed. 1121] (1944).

*Atascadero State Hospital v. Scanlon,* —— U.S. ——, ——, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985) (emphasis in original).

■■■ The plaintiff contends that Miss. Code Ann. § 65–1–8(b) (Supp.1984) constitutes a waiver of the state's constitutional immunity. The subsection provides as follows:

The state highway commission, as herein provided, shall be vested with the following powers, to wit:

\*   \*   \*   \*   \*   \*

(b) To enforce by mandamus, or other proper legal remedies, all legal rights or rights of action of the State Highway Commission with other public bodies, corporations, or persons, and the state highway commission *shall be a body corporate, and as such may sue and be sued, plead and be impleaded, in any court of justice having jurisdiction of the subject matter of any such suit*; in any suit against the state highway commission service of process shall be had by serving the secretary of the state high-

way commission with such process, and a copy of the declaration, petition or bill of complaint, or other initial pleading shall be handed the secretary along with the process; ...

*Id.* (emphasis added). Looking to the Supreme Court's most recent pronouncement in *Scanlon* and its test for waiver of a state's immunity to federal court jurisdiction, the Court is constrained to read the statute literally. The Supreme Court now requires, in order for a state statute to constitute a waiver of eleventh amendment immunity, that the statute specify the state's intent that it has consented to suit in federal court. Miss.Code Ann. § 65–1–8(b) (Supp.1984) does not specifically indicate the state's willingness to be sued in federal court. The statute simply appears to be a consent to suit in the state courts of Mississippi with the proviso that such suits be maintained only on such grounds as are authorized by statute.[2] *Lowndes County, Dist. 5 v. Mississippi State Highway Commission,* 220 So.2d 349 (Miss.1969); *State Highway Commission v. Knight,* 170 Miss. 60, 154 So. 263 (1934); *Stewart v. State Highway Commission,* 166 Miss. 43, 148 So. 218 (1933). *See also Karpovs,* 663 F.2d at 645 n. 6. As the Supreme Court stated in *Petty v. Tennessee-Missouri Bridge Commission,* 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959): "[w]here a public instrumentality is created with the right 'to sue and be sued' that waiver of immunity in the particular setting may be restricted to suits or proceedings of a special character in the state, not the federal, courts." *Id.* at 277, 79 S.Ct. at 787.

As a final note to plaintiffs' argument that the MSHC has waived their eleventh amendment immunity the Court notes the legislative action taken in response to *Pruett v. City of Rosedale,* 421 So.2d 1046 (Miss.1982) (abolished the doctrine of sovereign immunity).[3] Miss.Code Ann. § 11–46–1 *et. seq.* (Supp.1984) is the legislature's

response. Section 11–46–1(g) provides in pertinent part that " '[s]tate' means the state of Mississippi and any office, department, agency, division, bureau, commission, board, institution, hospital, college, university, airport authority or other instrumentality thereof, ..." Section 11–46–5(4) provides that "[n]othing contained in this chapter shall be construed to waive the immunity of the state from suit in federal courts guaranteed by the Eleventh Amendment to the Constitution at the United States." Mississippi's newest immunity enactments unequivocally preserve the state's desire to stay out of the federal courts. This Court thus holds that the record is clear that Mississippi did not intend to waive its eleventh amendment immunity.

### III.

The plaintiffs' third and final countermeasure is that since the state has authorized the purchase of liability insurance that the suit is not one against the state and its state treasury. Subsection (p) of Miss.Code Ann. § 65–1–8 (Supp.1984) provides as follows:

(p) The commission is further authorized, in its discretion, to obtain and pay for liability insurance covering each, all, or any of the motor vehicles of the department so as to cover the following damages for injury to persons or property, or both, caused by the negligence of any duly authorized officer, agent, servant, attorney, or employee of the department while operating such motor vehicle in the performance of his official duties, said policy to be written by the agent or agents of a company or companies authorized to do and doing business in the state of Mississippi. On each vehicle the insurance policy shall be limited to ten thousand dollars ($10,000.00) for personal injury to any one (1) person in any one injury to two (2) or more persons in any one (1) accident, and five thousand dol-

---

**2.** *See* Miss.Code Ann. § 65–1–8(p) (Supp.1984) quoted and discussed in text *infra.*

**3.** For an excellent discussion of the legislative problems presented by *Pruett see* Mayhew, *The*

*Abrogation of Sovereign Immunity in Mississippi: The Legislative Problem,* 3 Miss.C.L.Rev. 2 (1983).

lars ($5,000.00) property damage. All policies shall be subject to the approval of the director, and the premiums thereon shall be paid from the state highway fund. *No authority hereinabove given and no act of the commission or the director in connection with the carrying out of the provisions hereof shall be construed as a waiver by the Legislature of the state highway commission's immunity from suit for negligent, tortious, or unauthorized act of its agents, servants, or employees, and such immunity is hereby specifically retained and recognized*, the only liability of the state or the department hereunder being the payment of the premiums on said policies. This paragraph (p) shall stand repealed from and after July 1, 1985, by operation of law; ...

*Id.* (emphasis added).

■ The plaintiffs' assertion is an attempt to escape the reasoning in *Karpovs v. State of Mississippi*, 663 F.2d 640 (5th Cir.1981). The court in *Karpovs* stated that "[t]he suit for damages against the state of Mississippi is clearly barred. Any judgment against MSHC, a state agency, would be paid by funds from the state treasury; accordingly, the demands against MSHC are barred." Plaintiff contends that funds from the state treasury are not involved since the legislature has authorized, by way of Miss.Code Ann. § 65–1–8(p) (Supp.1984), and the Mississippi State Highway Commission has purchased liability insurance.

While the plaintiffs' argument has some merit both logically and pragmatically, the plaintiffs cannot circumvent the constitutional prowess of the Supreme Court's recent pronouncements which require that the state's statute specify the state's intent to be sued in *federal court. See Atascadeco State Hospital v. Scanlon, supra; Pennhurst State School & Hospital v. Halderman, supra.* Furthermore, the Fifth Circuit in *Karpovs* stated that "the majority of jurisdictions have held that procurement of insurance by a governmental unit to protect it from tort liability does not

effect a waiver of immunity." *Karpovs,* 663 F.2d at 646. *See also Reeves v. City of Jackson,* 608 F.2d 644 (5th Cir.1979) (state municipality did not waive its immunity by purchase of liability insurance). In addition, Miss.Code Ann. § 65–1–8(p) (Supp. 1984) contains the disclaimer as emphasized above that the purchase of insurance is not to be construed as a waiver by the legislature of the State Highway Commission's immunity from suit.

Therefore, it is the conclusion of this Court that it lacks the subject matter jurisdiction to hear this suit; that the Mississippi State Highway Commission is an alter ego of the state; that the Mississippi State Highway Commission as an agency of the state has not waived its eleventh amendment immunity; and that the purchase of liability insurance by the Mississippi State Highway Commission does not effect a waiver of eleventh amendment immunity. Since the Court lacks subject matter jurisdiction a discussion of the defendant's entitlement to summary judgment is unnecessary and improper. *See Hitt v. City of Pasadena,* 561 F.2d 606 (5th Cir.1977).

An Order in accordance with this Opinion shall be provided as set forth in the Local Rules.