REVISED

# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

September 22, 2020

Lyle W. Cayce
Clerk

No. 20-60072

The Lamar Company, L.L.C.,

*Plaintiff—Appellant*,

*versus*

The Mississippi Transportation Commission,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 1:17-CV-149

Before King, Stewart, and Southwick, *Circuit Judges*.
Leslie H. Southwick, *Circuit Judge*:

The argument on this appeal, until recently, centered on a Mississippi statute governing the height of roadside billboards. An interstate sign company has insisted the district court erred in holding that the state statute was unambiguous. Belatedly, the state argued that the needed diversity jurisdiction does not exist because the defendant agency is the alter ego of the state and, under established doctrine, cannot be a citizen for diversity purposes. The state is correct, even if late. We VACATE the district

No. 20-60072

court's judgment, REMAND for proceedings regarding attorneys' fees and costs, and also order that the case be REMANDED to state court.

FACTUAL AND PROCEDURAL BACKGROUND

The relevant Mississippi state statute regulates the height of billboards. MISS. CODE ANN. § 49-23-9(2)(b). The supposed ambiguity is whether the statute excepts from its height restrictions those roadside signs that predated a statutory change.

Until July 1, 2003, the statute governed only billboard size, not height. Effective on that date were several revisions adopted by the Mississippi Legislature, including this sentence: "The height of any sign structure shall not exceed forty (40) feet." 2002 Miss. Laws Ch. 518, § 1. Then in 2008, in what the plaintiff has sought to persuade was a minor error that can be judicially overcome, the legislature revised in a confusing manner. It left the unqualified height limit from the 2002 legislation but added language that signs erected after a certain date were limited to that height:

> The height of any sign structure shall not exceed forty (40) feet. The height of sign structures erected on or after April 15, 2008, shall not exceed forty (40) feet above the level of the road grade unless the grade of the land adjacent to the road is higher than the level of the road grade, then the height of the sign structure . . . shall not exceed forty (40) feet above the grade of the site where the sign is placed.

2008 Miss. Laws ch. 517, §4 (codified at MISS. CODE ANN. § 49-23-9(2)(b)). Is the first, unqualified height limitation the ignorable remnant of the previous statute or is it a command that overwhelms the prospective force of the second limitation?

Shedding light on the reason for the 2008 legislation is an affidavit executed by the current mayor of Gulfport, Billy Hewes, which Lamar introduced in district court. At the time of the adoption of the 2008

No. 20-60072

amendment, Hewes was president *pro tempore* of the state senate.  The 2008 amendment was based on a bill he sponsored.  Mayor Hewes indicated that the legislative purpose was to "grandfather" older signs by making prospective the height limit imposed in 2003.[1]  There is no reason to doubt the former senator's explanation of the purpose he had for introducing this legislation in 2008.  Of some importance, though, the state supreme court has held that legislators' *post hoc* explanations of what a statute was intended to mean, no matter how persuasive, are simply irrelevant.  *See Mississippi Gaming Comm'n v. Imperial Palace of Miss.*, 751 So. 2d 1025, 1028–29 (Miss. 1999) (rejecting testimony from two legislators).

The background for this litigation is as follows.  The Lamar Company, L.L.C., is an outdoor advertiser with billboards and related structures across the country.  It sought to change the height of a sign located in Gulfport, Mississippi, erected in 1986.  Lamar sent its proposal to the Mississippi Transportation Commission ("MTC") in May 2015.  The MTC notified Lamar that it disapproved of this modification because the sign already exceeded the limits on height and would continue to do so after the modification.  Lamar, though, insisted that this older sign was exempt from the height limits.

The parties continued discussions from 2015 to 2017, but no resolution occurred.  The MTC asserts that Lamar and the MTC joined forces to get a legislative revision.  Bills failed in both the 2016 and 2017 sessions to make the height limit prospective only.  In April 2017, abandoning

---

[1] As the saying goes, if you like laws and sausages, you should never watch either being made.  Senator Hewes's bill had clear language that the height limit was prospective in its effect, but that language was not adopted; the difficult final wording reflects the input and purposes of others.  *Compare* S.B. 2955, 2008 Reg. Sess. § 4 (Miss.), as introduced, http://billstatus.ls.state.ms.us/documents/2008/pdf/SB/2900-2999/SB2955IN.pdf, *with* 2008 Miss. Laws Ch. 517, § 4.

pursuit of a solution in the legislative branch, Lamar turned to the judicial by filing suit in the Chancery Court of Harrison County. The MTC removed the case to federal court based on federal-question jurisdiction. After removal, the district court required briefing on jurisdiction and particularly on the MTC's assertion of federal-question jurisdiction. The MTC's brief argued that the complaint presented a tacit but unavoidable federal question, or, alternatively, the parties were diverse and the requisite amount in controversy was satisfied.

Lamar's supplemental brief took the position that no federal question existed at the time of removal. The district court indicated diversity jurisdiction was a possibility by ordering additional briefing to determine the citizenship of each member of the Lamar limited liability company.

Without identifying applicable jurisdiction, the district court dismissed the suit because of Lamar's failure to exhaust administrative remedies. This court reversed "because no adequate administrative remedy existed." *Lamar Co., L.L.C. v. Miss. Transp. Comm'n*, 786 F. App'x 457, 461 (5th Cir. 2019). On remand, the district court granted partial summary judgment, holding that Section 49-23-9(2)(b) was unambiguous in its restriction of all billboards to forty feet.[2] The parties then agreed to dismiss Lamar's remaining claims with prejudice, and the district court entered final judgment.

On appeal, the first time a party questioned the court's jurisdiction was eleven days before oral arguments when the MTC moved to remand to state court. The MTC argued that it is an alter ego of the state and cannot be considered a citizen for purposes of diversity jurisdiction. Lamar

---

[2] We did not discover a statement by the district court as to the jurisdictional basis for its partial judgment, but diversity jurisdiction is implied.

No. 20-60072

responded by arguing, first, that the MTC waived its objection to subject-matter jurisdiction when it removed the case, and second, that the MTC is not an alter ego of the state. If we find subject-matter jurisdiction is lacking, Lamar requests costs, fees, and expenses.

The timing of the appearance of this jurisdictional issue is inopportune but not unique in our experience. Further, the MTC had been successful so far in this litigation. Since most district court judgments are affirmed, the odds favored the MTC's success here — though there was no guarantee. Thus, for the MTC to suggest the need to start over, though tardy and unfortunate if correct, is commendable. For Lamar to be annoyed, in a professional manner, by this late issue would be understandable.

## DISCUSSION

### I.    Subject-matter jurisdiction

Subject-matter jurisdiction is essential for the federal judiciary to hear a case. It "can never be waived or forfeited." *Gonzalez v. Thaler*, 565 U.S. 134, 141 (2012). Every federal court should, on its own, ensure that subject-matter jurisdiction is present. *See id.* We examine both possibilities, federal question under 28 U.S.C. § 1331 and diversity under 28 U.S.C. § 1332.

### A.    Federal-question jurisdiction

The MTC's basis for removal was the presence of a federal question. Generally, a federal question has to appear on the face of a complaint; it is not enough, for example, that a defense based on federal law exists. *Elam v. Kan. City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011). There are a few circumstances in which federal-question jurisdiction has been recognized despite the silence of the complaint. *See, e.g.*, *id.* (Holding complete preemption converts a state-law claim into one under federal law). We will explain the MTC's jurisdictional argument in a moment, but it started with

the fact that Lamar made claims under the Mississippi constitution's takings clause. MISS. CONST. art. 3, § 17. If the MTC's arguments were correct, then the takings claim could be considered under the district court's original jurisdiction; that court then would have discretion to consider the state-law claims on the basis of supplemental jurisdiction if the other claims were sufficiently related to the federal issue. *See Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (citing 28 U.S.C. §§ 1367(a), (c)).

Eventually, the takings claim was withdrawn. Nonetheless, the existence of federal-question jurisdiction at the time the suit was removed would allow the case to proceed on the state-law claims under the court's discretionary supplemental-jurisdiction authority. *See id.* at 639–40. It is true that the "general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial, but this rule is neither mandatory nor absolute." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). Here, there would be significant reasons for the district court to exercise its discretion and thereby sustain its actions in this suit if it became clear, only at the end of the litigation, that was the only jurisdictional option. The district court never had that question presented to it. In light of what we will explain as to the absence of diversity jurisdiction, we will assume supplemental jurisdiction would have been invoked. Therefore, we analyze whether there was a federal question at the time the suit was removed.

The well-pleaded-complaint rule generally controls whether there is a federal question in a suit. *Gutierrez v. Flores*, 543 F.3d 248, 251–52 (5th Cir. 2008). The MTC argued that the claims concerning a taking violative of state law "necessarily raise a stated federal issue, actually disputed and substantial," which is appropriate for the federal court to resolve, quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005). We have expressed the elements of the doctrine on which the MTC

6

No. 20-60072

relies in this way: "(1) resolving a federal issue is necessary to resolution of the state-law claim; (2) the federal issue is actually disputed; (3) the federal issue is substantial; and (4) federal jurisdiction will not disturb the balance of federal and state judicial responsibilities." *Bd. of Comm'rs of S.E. La. Flood Prot. Auth.-E. v. Tenn. Gas Pipeline Co.*, 850 F.3d 714, 721–22 (5th Cir. 2017) (quoting *Singh v. Duane Morris LLP*, 538 F.3d 334, 338 (5th Cir. 2008)).

The district court considered this same argument in litigation involving Lamar, a school district, and a billboard. *Lamar Co., L.L.C. v. Harrison Cnty. Sch. Dist.*, No. 1:17CV206, 2017 WL 11318991, *2–4 (S.D. Miss. Sept. 12, 2017). The court determined these difficult-to-satisfy conditions were not satisfied. That conclusion does not control here, but the court's analysis is instructive.

The supposed federal issue embedded in the state-law claims was described in the MTC's district court briefing this way:

> Even though Plaintiff asserts in its complaint that the parties have differing interpretations of Miss. Code Ann. § 49-23-9, the Highway Beautification Act is at the heart of the controversy. [23 U.S.C. § 131 (control of outdoor advertising).] Plaintiff's takings claim is indisputably controlled by the interpretation of 23 C.F.R. § 750.707(b) and the Highway Beautification Act.

The MTC argued that this federal law "requires states to enact laws regulating outdoor advertising or, in the alternative, suffer a loss of federal highway funds." A federal regulation required the states to provide that even if a sign complied with "state law or state regulations" at the time it was erected, it had to be considered nonconforming if the statutes or regulations changed. 23 C.F.R. § 750.707(b). The state statute is the one we have been discussing, Section 49-23-9(2)(b), while the state regulation on billboard height is 37 Miss. Admin. Code, Pt. 1, Subpt. 5901, Ch. 09002,

§ 1000.1c.   The MTC's position was that the statute and implementing regulations on highway signs were adopted by the state in order to comply with federal law, thus presenting a sufficiently intertwined federal question.

We summarize.   The merits issue is the meaning of a 2008 state statute.  Whatever it means, that is the existing state law to which Lamar's sign must conform.  If the state statute results in a taking because it requires old signs to be updated, perhaps expensively, the fact that the statute was written to comply with federal law does not alter the fact that the state caused the injury.  The MTC also argued that the federal statutory scheme provides for the federal government to bear 75 percent of the liability for any taking. *See* 23 U.S.C. § 131(g).  On that point, we cannot get beyond the doctrinal requirement that the federal issue must be significant "to the federal system as a whole." *Bd. of Comm'rs of S.E. La.*, 850 F.3d at 723.  The fact that a state court might conclude that a taking occurred, and even if there were a draw on the federal treasury as compensation for a billboard, nothing of national consequence would have occurred.

There was no federal-question jurisdiction arising from Lamar's complaint at the time of removal.

### B.    Diversity jurisdiction

Diversity jurisdiction requires complete diversity — no plaintiff can be a citizen of the same state as any defendant. *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005). The amount in controversy must exceed $75,000.  28 U.S.C. § 1332(a).  The nuance here is that a state is not a citizen of itself for purposes of diversity. *Moor v. Alameda Cnty.*, 411 U.S. 693, 717 (1973).  The question is whether the MTC should be considered the equivalent of the state of Mississippi for these purposes.

First, some background on the MTC.  It is a state commission created in 1930; its original name was the Mississippi Highway Commission, changed

to the current name in 1992. *See* 1930 Miss. Laws ch. 47, § 1 (created); 1992 Miss. Laws ch. 496, § 3 (name changed to the Mississippi Transportation Commission). The Mississippi *Department* of Transportation is significant in our evaluation as well. It has been referred to by the state supreme court as the MTC's "subordinate agency." *Hill Bros. Constr. & Eng'g Co., Inc. v. Miss. Transp. Comm'n*, 909 So. 2d 58, 61 (Miss. 2005). It appears that the Department functions as the operating agency for the MTC.[3]

Our analysis of whether the MTC can be considered a citizen of its home state relies on Chief Judge Charles Clark's seminal explanation for our circuit of the relevant doctrine, which evaluated whether another Mississippi agency was an "alter ego" of the state. *Tradigrain, Inc. v. Miss. State Port Auth.*, 701 F.2d 1131, 1132 (5th Cir. 1983). A governmental agency must be sufficiently independent of the state for it to be a citizen. *Id.* The court stated that "the essential question is whether the state is the real party in interest in the lawsuit." *Id.* That opinion then identified a variety of considerations for alter ego status, though it did not create a single, comprehensive list.

---

[3] We use that terminology in part because the title to the legislation creating the Department explained that among the purposes of the Act were "to create a Mississippi Department of Transportation governed by elected Transportation Commissioners; to provide that the present State Highway Commissioners shall be the Transportation Commissioners; [and] to transfer the duties and responsibilities of the State Highway Department to the Transportation Department." 1992 Miss. Laws ch. 496 (title). That understanding of the legislation is confirmed by its conferring on the Department the "powers, duties and responsibilities of the State Highway Department with respect to the construction and maintenance of the state highway system," Miss. Code Ann. § 65-1-2(4); the requirement that the Department implement the rules, regulations and orders of the MTC, *id.* § 65-1-47; the Department's duty to "receive and expend any funds" granted by the federal government for transportation purposes, *id.* § 65-1-2(3); the Department's responsibility to "carry out all contracts and agreements" that the MTC has entered with any county, *id.* § 65-1-59; and the Department's authority, at the MTC's direction, to "locate, construct, reconstruct, and maintain" any state highway within a municipality, *id.* § 65-1-75

Its first discussion contained these factors:

> whether the agency has been granted the right to hold and use
> property, whether it has the express authority to sue and be
> sued in its corporate name, the extent of its independent
> management authority, and "a factor that subsumes all
> others," the treatment of the agency by the state courts.

*Id.* at 1332 (quoting *Huber, Hunt & Nichols v. Architectural Stone Co.*, 625 F.2d 22, 24–25 (5th Cir. 1980)).   As to state-court treatment, *Tradigrain* said it was relevant whether "the state has sued the agency in its own courts" and whether "a state court [has held] that the statute of limitations, which did not normally run against the state itself, ran against the agency." *Id.* We find no caselaw on those two points but will discuss other state-court treatment.

Other factors favoring a finding of an agency's independence from the state are its ability to hire its own employees, to enter into its own contracts, and to hire its own counsel. *Id.* Another grouping in the same opinion is this: "(1) whether the state is responsible for the agency's debt; (2) whether the agency is primarily concerned with local, as opposed to statewide problems; and (3) the degree of general financial autonomy of the agency." *Id.*

Because these factors often indicate different conclusions, we must "balance these against each other." *Id.* at 1333. We start with whether the MTC has a right "to hold and use property." One statute indicates that the MTC is authorized to bring condemnation actions. Miss. Code Ann. § 65-1-47. Another statute gives more detail. Title gained from eminent domain for highway construction is taken in the name of the MTC, not in the name of the state. *Id.* § 65-1-305(1). Certainly, the MTC can hold and use real property. Compensation for the taking is paid out of the State Highway Fund. *Id.* § 65-1-47. We do not hazard a detailed explanation of that fund, but various statutes indicate that funds from any designated source, presumably including gasoline sales taxes and the like, are placed in the

Highway Fund and there maintained as a separate account by the State Treasurer (another one of the many statewide elected officials). *Id.* § 65-1-111. The MTC decides what bonds or notes are needed for highway purposes and requests issuance by the state bond commission. *Id.* When funds are received from sources such as the federal government for highway purposes, the MTC is notified of the deposit into the Highway Fund. *Id.* § 65-1-117. In summary, there is a pot of money that the MTC draws upon, filled at least in part from sources other than general state tax revenues. *Id.* § 65-1-115.

Further, the MTC is "a body corporate and as such may sue and be sued, plead and be impleaded, in any court of justice having jurisdiction of the subject matter of any such suit." *Id.* § 65-1-5. As for independent management as well as contracting authority, the MTC is authorized to carry out all contracts in relation to state highways by delegating such duties to the Department. *Id.* § 65-1-59. The Department's executive director signs all contracts in the name of the state and "receive[s] and assume[s] control" of state highways "for the benefit of the state." *Id.* § 65-1-10(k). The executive director can award contracts after a bidding and advertisement process described in the code. *Id.* § 65-1-85. Implicitly, the MTC is responsible through the Department of Transportation for hiring and firing employees, a finding implied by the fact the executive director sets the compensation for all employees. *Id.* § 65-1-10(f).

Two factors in *Tradigrain* weigh against independence or are unclear. This court once held that any liability imposed in a suit for damages against the MTC, at that time the State Highway Commission, "would be paid by funds from the state treasury." *Karpovs v. Mississippi*, 663 F.2d 640, 644 (5th Cir. Unit A 1981). Another factor is whether the agency can employ its own counsel. The state attorney general represents the MTC in this litigation, but a Mississippi Department of Transportation staff attorney is also shown

on the MTC briefs.  We give no weight to the question of hiring counsel as we are unsure of the MTC's authority.

Thus, the following *Tradigrain* factors supporting independence are met: holding and using property, right to sue and be sued, independent management authority, ability to hire its own employees, authority to enter into its own contracts, statewide and not simply local authority, and a fair amount of financial autonomy.  Cutting the other way is that the MTC may not be financially responsible for certain liabilities.

Despite the number of factors supporting independence, we have not yet examined the factor *Tradigrain* identified as subsuming — how state courts have discussed the agency.  We examine a Mississippi federal district court opinion first, as it described that caselaw.  *See Brady v. Michelin Reifenwerke*, 613 F. Supp. 1076, 1079 (S.D. Miss. 1985).  The federal court's analysis is quite helpful, but it does not have the weight of a state supreme court decision.  The federal court was considering state sovereign immunity, but its analysis is quite similar to that of our diversity issue.  *Id.* at 1078 n.1 (citing *Tradigrain*, 701 F.2d at 1132).  The district court held that the MTC was the alter ego of the state.  *Id.* at 1079.

The state court opinion relied upon in *Brady* was from just three years after the Mississippi Highway Commission, now the MTC, was created in 1930.  *See State Highway Comm'n v. Gulley*, 145 So. 351 (Miss. 1933).  The Mississippi Supreme Court held that "[i]t is too well settled to require the citation of authority that the state highway commission, which is an agency of the state, is not subject to suit unless made so by statute."  *Id.* at 354.  That this principle could be so well-settled about so new an agency would be surprising, but likely what needed no citation was the more general principle that a state agency is not subject to suit.  That well-settled principle concerns state sovereign immunity, but it is applicable here too.

No. 20-60072

The one concern we have about *Gulley* is whether it was using the term "agency of the state" in the manner relevant for our analysis, *i.e.*, that the Highway Commission was Mississippi's alter ego. An agency as narrowly focused as one to celebrate the state's centennial in 1917 had sovereign immunity except as altered by the statute creating it. *Mississippi Centennial Exposition Co. v. Luderbach*, 86 So. 517, 519 (Miss. 1920). Because immunity for state-created agencies seemed universal at the time of *Gulley*, we take a closer look at the 1930 Highway Commission.

Confirmation of the significance of the structure of and authority given to the Commission is provided by the state supreme court's contrasting the 1930 Commission with earlier, less empowering statutory schemes:

> A State Highway Commission was created by chapter 168, Laws of 1916[;] and by chapter 278, Laws of 1924, the said act of 1916 was repealed, and a state highway department was created consisting of eight commissioners, with power to act in a supervisory and advisory capacity to boards of supervisors in constructing state highways, and with power to maintain the same.[4] But it was not until the passage of chapter 47, Laws of 1930, that the State Highway Commission was created a body corporate, with power to sue and be sued, and with power to acquire by purchase, gift, or otherwise rights of way and lands containing building material, or lands necessary for other purposes incident to the construction of a system of state highways, and also with the power of eminent domain to secure lands for any of these purposes.

---

[4] Though not affecting the applicability of the supreme court's analysis, our review of these statutes reveals that what the court stated was accomplished by 1924 legislative changes actually was the result of 1920 Miss. Laws ch. 203.

*State Highway Comm'n v. Flint*, 172 So. 299, 299 (Miss. 1937). In part relying on *Flint*, we accept that the state supreme court's use of the phrase "state agency" for the forerunner of the MTC had the meaning relevant for us.

Finally, we discuss where on the scale to place the fact that from the start in 1930, the Commission has consisted of three members, each elected for a four-year term from a separate district, the three districts together comprising the entire state. 1930 Miss. Laws ch. 47, § 1; Miss. Code Ann. § 65-1-3. Election gives independence from some controls — no hiring or firing of commissioners by the governor, for example. Mississippi splinters executive power by electing eight statewide officials and three commissioners each for the Transportation and Public Service commissions.[5] The big picture is that the three elected officials at the head of the MTC exercise that portion of the state's executive power involving highways and certain other transportation matters, power granted and subject to withdrawal by voters.

The goal of this analysis is to see if Mississippi is the real party in interest. From that perspective, each of the elected officials is the leader of his or her piece of the executive branch, including three in charge of transportation. Substantial independence certainly exists between the MTC and other parts of the Mississippi government, but with that independence, the MTC has been awarded state leadership for its area of responsibility.

We stated earlier that the test we are using is similar to the analysis for sovereign immunity. *Tradigrain*, 701 F.2d at 1132. In 2019, we affirmed a dismissal involving the MTC based on sovereign immunity. *Bay Point Props.,*

---

[5] Delbert Hosemann, Mississippi Official & Statistical Register 2016-2020, at 77–93 (2017).

No. 20-60072

*Inc. v. Miss. Transp. Comm'n*, 937 F.3d 454, 456-57 (5th Cir. 2019).[6] Mississippi state courts reached a similar conclusion, holding that the Highway Commission enjoys immunity unless a suit is statutorily authorized. *See, e.g.*, *State Highway Comm'n v. Knight*, 154 So. 263, 263–64 (Miss. 1934)[7]; *Stewart v. State Highway Comm'n*, 148 So. 218, 218 (Miss. 1933).

We have applied the *Tradigrain* analysis with some care. Certainly, there is much to support that the MTC is independent. Still, the less numerous but weightier items on the scale favor holding that the MTC is an alter ego of the state. We conclude the MTC is not a citizen of Mississippi for diversity-jurisdiction purposes. Therefore, this court has no subject-matter jurisdiction unless Lamar is right that the MTC has waived its status as a non-citizen. Lamar relies on a decision in which a state defendant removed the case to federal court based on a federal question. *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 239–40 (5th Cir. 2005). In accordance with Supreme Court precedent, we held that the removal waived the state's

---

[6] Two district court opinions found sovereign immunity to protect the MTC. *See Stuckey v. Miss. Transp. Comm'n*, No. 3:07CV639, 2009 WL 230032, at *1–2 (S.D. Miss. Jan. 29, 2009); *Brady*, 613 F. Supp. at 1081–82.

[7] Lamar cites to *Knight* for the proposition that Mississippi state courts allow suit. That is true, but *Knight* was explaining how the state can renounce existing immunity. "*In the absence of a statute so providing*, a public corporation created *in invitum* and supported by taxation is not liable for damages caused by the negligent acts of its officers and agents; their negligent failure to discharge a duty imposed on the corporation by law." *Knight*, 154 So. at 263–64 (emphasis added). That is a recognition both that immunity exists and that its protections for the state itself and its agencies can be voluntarily withdrawn. We do not need to plumb the depths of Mississippi law on this point, but the supreme court also has recognized that the Highway Commission could be sued for a taking without compensation because the state constitution's prohibition of that was "self-executing." *Parker v. State Highway Comm'n*, 162 So. 162, 164 (Miss. 1935); *accord Flint*, 172 So. at 300. Our issue is not whether the MTC has across-the-board immunity, but whether the MTC is in the category, along with the state itself, of having sovereign immunity unless altered by statute, the state constitution, or something else.

immunity from suit. *Id.* at 250 (relying on *Lapides v. Bd. of Regents*, 535 U.S. 613 (2002)). That does not assist Lamar. Though determining whether a defendant has sovereign immunity and whether it is the alter ego of the state for diversity purposes have similar analyses, the effect of the determinations differ. A state can at times waive its immunity but can never concede subject-matter jurisdiction: "No consent by the state to submit itself to suit could affect the question of diverse citizenship." *State Highway Comm'n of Wy. v. Utah Constr. Co.*, 278 U.S. 194, 199–200 (1929).

The MTC is not seeking dismissal because of sovereign immunity. In fact, the MTC explicitly admitted at oral argument that it has waived any immunity argument. Instead, the MTC correctly identifies that subject-matter jurisdiction is not present.

## II.    *Lamar's motion for fees, costs, and expenses*

Lamar requests costs, expenses, and fees in compensation for the MTC's late acknowledgement of error. Lamar provides three avenues to grant this request: (1) 28 U.S.C. § 1447(c); (2) Federal Rule of Civil Procedure 11(c); and (3) the Mississippi Litigation Accountability Act. Our maps do not show any of these three avenues reaching the Fifth Circuit.

### A.    *28 U.S.C. § 1447(c)*

First, Lamar asks for "just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The removing party must have "lacked an objectively reasonable basis" at the time it sought removal to be subject to the imposition of costs and expenses. *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). If no objectively reasonable basis was present, costs and fees are proper, but not otherwise. *Id.*

The Court explained that the financial burden for improper removal serves important deterrence purposes, but removal has its own importance:

No. 20-60072

> Assessing costs and fees on remand reduces the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff. The appropriate test for awarding fees under § 1447(c) should recognize the desire to deter removals sought for the purpose of prolonging litigation and imposing costs on the opposing party, while not undermining Congress' basic decision to afford defendants a right to remove as a general matter, when the statutory criteria are satisfied.

*Id.* at 140. Consequently, when to impose Section 1447(c) sanctions is a discretionary decision. *Id.* at 141.

We have already analyzed whether a federal question was lurking within Lamar's complaint. We spent even more words explaining that two significant principles of diversity jurisdiction were presented in this case, *i.e.*, the state itself is not a citizen for Section 1332 purposes, and an agency of the state may also be lacking citizenship. Neither party nor the experienced and able district judge seemed to have thought of those principles. We will never know if this court would have noted them on its own either — though it was vital for us to do so since jurisdiction is the *sine qua non* for a ruling — because the MTC did finally inject the jurisdictional issue into the case.

The foregoing details some of the events and legal arguments presented. In order for the district court to exercise its discretion on whether to impose costs and attorneys' fees for an improvident removal, some fact finding may well be needed. *See Miranti v. Lee*, 3 F.3d 925, 928 (5th Cir. 1993). On remand, the district court shall proceed as it considers appropriate in addressing the award of costs or fees under Section 1447(c).

### B.    *Rule 11 Sanctions*

Second, Lamar seeks sanctions pursuant to Rule 11. Fed. R. Civ. P. 11(c). Rule 11(b) governs the representations that parties make to the court, and Rule 11(c) provides the procedure necessary to request sanctions

when an attorney or party violates the above.  Those rules, though, "govern the procedure in all civil actions and proceedings in the United States district courts." Fed. R. Civ. P. 1.  Thus, Rule 11 is not applicable here.  The district court should add Rule 11 to its evaluations on remand.

### C.    *Mississippi Litigation Accountability Act*

Third, Lamar argues that relief is appropriate under the Mississippi Litigation Accountability Act. Miss. Code Ann. § 11-55-5.  Generally, that Act provides for costs and fees in cases brought without "substantial justification." *Id.*  The Mississippi Supreme Court has upheld use of this Act to award costs in cases of frivolous removal to federal court.  *See In re Guardianship of O.D. v. Dillard*, 177 So. 3d 175, 182–83 (Miss. 2015).  This argument is one for the state court to consider at some point during the litigation there.

We VACATE and REMAND to the district court, and order that court to REMAND to the Harrison County Chancery Court. The district court should consider any motions for attorneys' fees and costs under Section 1447(c) or Rule 11.  Whether proceedings on those issues occur before or after the case is remanded to state court should be considered carefully to assure there is jurisdiction over those matters.